HALL, Judge.
This expropriation proceeding involves the taking of 44.205 acres across a tract of land in Richland Parish in connection with the construction of Interstate Highway 20. Suit was filed by the State through the Department of Highways under the Quick Taking Statute (LSA-R.S. 48:441^460) on June 23, 1965, and the sum of $3,540 was deposited in the registry of the court as the estimated value of the land taken. Defendants answered seeking to recover $25,102.50 *158 as the value of the property taken and $69,-100 as damages to their remaining property.
The district court fixed the value of the property taken at $11,758.53 and severance damages at $15,591 and, accordingly, judgment was rendered in favor of plaintiffs in the total amount of $27,349.53, subject to a credit of $3,540 for the amount deposited in the registry of the court, together with interest and costs including expert witness fees. Plaintiff appealed.
At the time of the taking the tract of land owned by defendants consisted of approximately 2,114 acres located near the western boundary of Richland Parish between Rayville and Monroe, south of Highway 80. The right of way expropriated by plaintiff crosses defendants’ property from east to west leaving a tract of approximately 450 acres remaining north of 1-20 and a tract of approximately 1,620 acres remaining south of 1-20. The tract was acquired in 1940 by defendant, Edwin H. Myrick, who later conveyed an undivided one-half interest to Dr. Alfred Dent Tisdale, whose heirs are parties to this proceeding with Myrick.
At the time the property was originally purchased it was entirely woodsland. The property has been actively managed and operated by Myrick on behalf of all the owners and as the property was progressively cleared through the years, it has been used for the growing of cotton, corn, soybeans and the raising of hogs and cattle. Prior to the taking, by following a general plan of development and putting the profits back into the farm, defendants had cleared and put into cultivation approximately 1,200 acres. Subsequent to the taking an additional 400 acres has been cleared and put into cultivation. At the time of the taking approximately 200 acres were in cotton and approximately 600 to 900 acres were in soybeans. Parts of the property were used as pasture and for the growing of grain crops. The balance was. woodsland. The property taken was part of the woodsland area.
Defendants’ appraisers, Sevier and Dop-son, testified the highest and best use of the property taken is as farm land. Plaintiff’s appraisers, Medley and Carter, testified the highest and best use of the property taken is as woodsland and marsh or marginal land, but both conceded that most of the property taken is subject to being converted into soybean production.
All of the appraisers used the market data or market value approach and all relied on various “comparable” sales in arriving at their estimates of the value of the property taken and their estimates of severance damages based on the before and after market value of the remaining property. The conclusions of the appraisers are summarized as follows:
Sevier
Value of property taken—
44.205 acres @ $500
per acre $22,102
Severance damages—
Reduction in value of 15 acres on Crew Lake north of highway @ $500 per acre due to lack of access $ 7,500
Reduction in value of 133 acres south of highway due to poor drainage 20,460 27,960
TOTAL $50,062
Dopson
Value of property taken— 44.205 acres @ $455 per acre $20,113
Severance damages— Reduction in value of 198 acres north of highway and south of Crew Lake at 50% of before value due to lack of access $50,495
Reduction in value of 252 acres north of highway and Crew Lake due to separation from remainder 9,000
Reduction in value of 133 acres south of highway due to poor drainage and separation from remainder 9,000 68,495
TOTAL $88,608
*159 Medley
Value of property taken— 44.205acres @ $75 per acre (result rounded up to amount shown) $ 3,390
Severance damages— Reduction in value of 15 acres north of highway due to lack of access @- $60 per acre 900
TOTAL $ 4,290
Carter
Value of property taken— 44.205acres <§ $82 per acre (result rounded to amount shown) $ 3,545
Severance damages— Reduction In value of 20 acres north of highway @ $60 per acre 1,200
TOTAL $ 4,745
The trial judge's conclusions can be summarized as follows:
Trial Judge
Value of property taken 44.205acres @ $266 per acre $11,758.53
Severance damages— To 80 acres in the north remainder @ $50 per acre $4,000
To 133 acres in the south remainder @ $50 per acre 6,650
To 15 non-accessible acres in north remainder @ $366 per acre less 10% remaining value 4,941 15,591.00
TOTAL $27,349.53
Appellant specifies as error the awards made by the trial court in each of the categories set forth above.
On the value of the property taken, appellant contends the trial judge erred in rejecting the comparables relied on by its appraisers and accepting the comparables relied on by defendants’ appraisers which consisted of other acquisitions by the Department in connection with the 1-20 project. Appellant also complains of the trial judge’s method of arriving at his evaluation of $266 per acre by averaging the prices paid or deposited in court in the three acquisitions by the Highway Department.
While sales to an expropriating authority are not controlling as comparable sales, they may be considered in determining market value, particularly where comparable sales between private parties are not available. State, through the Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93 (1960); State, through the Department of Highways v. Caillier, 157 So.2d 274 (La.App. 3d Cir. 1963); Gulf States Utilities Company v. Norman, 183 So.2d 421 (La.App. 3d Cir. 1966).
The three comparables primarily relied on by defendants’ appraisers and by the trial court can be summarized as follows:
(1) Union Producing Company to Department of Highways. Sale of 33.808 acres located immediately west of the Myrick property for a total price of $6,255. The Highway Department appraisers testified this price was based on a value of approximately $60 per acre for the land taken with the balance being severance damages. The trial court used a figure of $202.91 per acre based on additional compensation attributable to a road constructed by the Highway Department on the Union Producing Company property.
(2) Gross to Department of Highways. An expropriation proceeding involving 36.536 acres west of the LaFourche Canal about two miles from the Myrick property. $5,120 was deposited in the court by the Highway Department based on a value of $140.03 per acre. An additional $5,875 was deposited as severance damages.
(3) Huenefeld to Department of Highways. Sale of 120.094 acres for $65,-330 or a value of $544 per acre. This property is located about two and one-half miles west of the Myrick property. By road the Huenefeld property is about four and one-half miles east of Monroe while the Myrick property is about fourteen miles east of Monroe. Based on location the trial judge used an adjusted value of $455 per acre for this property in his averaging process.
*160 The Myrick property is plainly worth more than the Union Producing Company or Gross properties, as those properties are lower and were not part of an integrated farming operation. The Myrick property is plainly worth substantially less than the Huenefeld property. Although the physical characteristics of the Huenefeld property are substantially similar to the Myrick property, the testimony of Mr. Carter shows that the appraisal of the Huenefeld property was based on a highest and best use as “ruban”.that is, property subject to development in the not too distant future. Carter pointed out that the Huenefeld property lies close to Monroe and that development was going on in the vicinity of the property.
Defendants’ appraisers testified there were no truly comparable private sales of property in the area. The comparables relied on by plaintiff’s appraisers bear this out. Several of the comparables involve property located twelve to twenty miles away from the subject property and bear little, if any, probative value. Other com-parables relied on by plaintiff’s appraisers were of small isolated tracts that, again, offer little assistance in arriving at a value of the subject property. Three comparables relied on by plaintiff which can be given some weight are summarized as follows:
(1) Earl to Yarbrough. Sale in December, 1963 of 2,840 acres south of the Myrick property for a price of $210 per acre. This property consisted of approximately 1,300 acres cleared land and 1,500 acres woodsland.
(2) Anderson to Logue. Sale in 1964 of 674 acres located about eight to ten miles from the subject property at a price of $267 per acre. This property had about 250-300 acres in woods and the remainder was used as a dairy farm.
(3) Bishop to Henry. Sale in 1965 of 230 acres of open land in cultivation at a price of $300 per acre. This property is located about three miles from the Myrick property.
The difficulty in giving any great weight to these comparables lies in the failure of plaintiff’s appraisers to furnish enough information relative to location, access, soil conditions, and other factors necessary in making a valid comparison.
The basic fallacy in plaintiff’s appraisers’ estimate of the value of the property taken at $75 per acre is their classification of the Myrick property as woods or marshland, as distinguished from woodsland susceptible of being placed into agricultural production. The evidence satisfies us as it did the trial court that the Myrick property taken falls into the latter category. The part of the property taken by plaintiff was woodsland and was of sufficient elevation to support a growth of switch cane, sweet gum, white oak, red oak, gum and cypress timber. The soil is a clay base loam, highly suitable for growing soybeans and of the same type as that property which had already been cleared and planted in soybeans.
Although arriving at his evaluation figure by an averaging of the three comparables, the trial judge stated that in fixing the value he took into consideration all of the testimony and evidence. While we believe the averaging of comparables is subject to the same objections as the averaging of appraisals, which is not approved by the courts, we believe the figure arrived at by the district court as a valuation of the property taken is not unreasonable and is not manifestly erroneous, considering all of the available evidence. We, therefore, affirm this portion of the judgment.
Appellant next contends that the trial court erred in awarding the sum of $50 per acre as severance damages to 80 acres of cleared farm land in defendants’ remaining tract north of 1-20. Plaintiff’s appraisers found no damage or loss in market value of this tract. Defendants’ ap *161 praisers testified that this area was damaged in value because of its separation from the remaining cleared farm land and because of lack of access from the south. The trial court found that this 80 acre tract sustained a loss in market value by its separation from the large commercial farming operation conducted by defendants and because, standing alone, it is not of sufficient size to conduct a separate modern farming operation. The trial court fixed the amount of damages, or reduction in value, at $50 per acre or a total of $4,000. We affirm this portion of the judgment.
Appellant further complains of the award of $4,941 as severance damages to a 15 acre tract north of the highway and south of Crew Lake. The evidence shows that this 15 acre tract has been rendered inaccessible and practically useless either as farm land or as camp sites along Crew Lake. Plaintiff’s appraisers fixed the damages to this area at $900 and $1,200 respectively. Defendants’ appraisers fixed the damages at $7,500 and $10,000 respectively, based primarily on an initial evaluation of the land prior to the taking at $1,000 per acre. Defendants’ appraisers were of the opinion this area was suitable for development and sale of camp sites and lots. The trial court correctly concluded that such an evaluation was excessive due to lack of adequate access by road to this' tract and the necessarily high cost of development for camp site purposes. The evidence does support, however, the trial judge’s conclusion that this water front property had a somewhat higher value than the woodsland area generally and he established a before taking value of $366 per acre. Finding that the value of the property after the taking due to total inaccessibility was reduced to ten per cent of its original value, the trial judge fixed damages accordingly. We find no error in this determination and affirm this portion of the judgment.
Appellant next claims that the trial court was in error in awarding the sum of $50 per acre as damages to a 133 acre tract south of the highway based on damages to the drainage in the area. Defendants’ witnesses testified that this area of cleared land planted in winter grazing crops drained poorly after the highway was constructed. Myrick testified that prior to the taking the water draining onto this area spread out and dissipated quickly. After the taking due to channeling the water through one opening under the highway greater amounts of water accumulated on this tract at a given time slowing down the dissipation of water. Plaintiff’s witnesses, qualified engineers who worked on the project, testified that in their opinion the construction of the highway neither helped nor hurt the drainage on defendants’ property. The trial court found that defendants’ description of the drainage problems caused by the highway was logical and based on actual on-the-ground experience and observation. He fixed damages to this tract at $50 per acre. We find no error in this conclusion and affirm this portion of the judgment.
In their brief, defendants ask that the expert witness fees of $750 for each appraiser be increased by $200 each to cover their fees for appearing in court. The trial court fixed the fees to be taxed as costs after hearing testimony at the trial on the merits as to the work done by the witnesses, including their appearances in court. Defendants did not appeal or answer plaintiff’s appeal. This issue is not properly before us for decision.
For the reasons assigned, the judgment of the district court is affirmed.
Affirmed.